## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER PARFAITE, | : | CIVIL NO: 3:22-CV-00316 |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| | : | |
| KIM LIPPINCOTT, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

### I.  Introduction.

Plaintiff Walter Parfaite claims that the defendant violated his rights in connection with criminal proceedings against him.  Currently pending is the defendant's motion for summary judgment.  For the reasons set forth below, we will grant in part and deny in part the defendant's motion for summary judgment. We will also set a new dispositive motions deadline.

### II.  Background.

Parfaite began this action by filing a complaint. *See doc. 1*.  He also filed an application to proceed *in forma pauperis*, which we granted. *See docs. 5, 7*.  After the defendant waived service and counsel for the defendant entered an appearance, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C.

§ 636(c), and the case was referred to the undersigned. *See doc. 18.* Thereafter, Parfaite filed an amended complaint, *see doc. 20*, and then a second amended complaint, *see doc. 22.* The second amended complaint is the operative complaint. *See doc. 26* (order so stating).

The second amended complaint names one defendant: Kim Lippincott. Parfaite mentions the Fourth, Fifth, Eighth, and Fourteenth Amendments in his second amended complaint. It is extremely difficult, however, to ascertain the exact nature of Parfaite's claims because he does not clearly set forth what is alleged to have happened; he seems to assume—incorrectly—that the court is aware of underlying events and how his allegations fit into those events. We have, nevertheless, done our best to piece together Parfaite's allegations to try to make sense of what he is claiming.

Parfaite alleges that on February 23, 2021, Lippincott and other non-defendant officers arrested him, and Lippincott charged him with drug violations. *Doc. 11* ¶ 4. According to Parfaite, Lippincott made numerous misrepresentations and falsified evidence in connection with those charges, the events leading up to those charges, and events following those charges. *Id.* ¶¶ 1–5, 7, 8. More specifically, he alleges that Lippincott falsified a statement from her informant Chester Miller. *Id.* ¶ 1. In this regard, he alleges, that although Miller said that a

Marli Plattenburg[1] may have been the woman using drugs in a hotel bathroom, he was unsure. *Id*.  But, Parfaite asserts, Lippincott turned that purported uncertain identification into a "positive false identification, of Marli Plattenburg." *Id*.  And according to Parfaite, that false identification was used against him on October 7, 2021, and November 8, 2021. *Id*.[2]  He also alleges that Lippincott ran a "JNET search on a silver SUV as well as taking [] photographs of the woman that was driving." *Id*.  According to Parfaite, Lippincott falsely identified the woman as Marli Plattenburg, even though the woman did not fit Plattenburg's description and Lippincott knew it was not Plattenburg. *Id*.

Parfaite also alleges that Lippincott failed to properly fill out a drug task force activity form, that she mishandled drug purchase money, and that her "changed and false reports" in this regard were used against him on October 7, 2021, and November 8, 2021. *Id*. ¶ 2.  Parfaite further alleges that on February 23, 2021, "Lippincott fabricated physical evidence in regard to a bill from [a] February 22, 2021, controlled purchase she mishandled." *Id*. ¶ 3.  He asserts that the "false and fabricated evidence" has been used against him from February 23, 2021, till

---

[1] Parfaite does not allege who Marli Plattenburg is or how she otherwise fits into the events.

[2] Parfaite does not allege who used the positive identification against him or in what context it was used.

the last week of March 2022," when a superseding information was filed against him. *Id*.

Parfaite also alleges that on February 23, 2021, Lippincott "maliciously charged" him with controlled substances that another person had admitted were his and with "controlled substances that were found in a little black purse with the owners identification card next to them." *Id*. ¶ 4.  Further, according to Parfaite, Lippincott included false statements in her affidavit[3] regarding what a Matthew Luce said about the drugs at issue, and she charged him with drugs that belonged to others. *Id*.  According to Parfaite, "[t]he fabricated claim and added weight of controlled substances onto what [he] admitted to, tainted the probable cause in her filed affidavit and made it stronger." *Id*.  And he contends that "[t]he defendants [sic] added weight, fabricated and misrepresented statements and facts have been used against [him] from the start, and violated [his] rights." *Id*.

Parfaite also alleges that on February 23, 2021, Lippincott falsely claimed in connection with a bail criteria form that he was convicted of possession with intent to deliver in New Jersey and that he had misrepresented his identity. *Id*. ¶ 5. According to Parfaite, given Lippincott's false statements, he had no chance of making bail on February 23, 2021. *Id*.  Parfaite alleges that on March 12, 2021, he

---

[3] Although not clear, it appears that Parfaite may be referring here to an affidavit in connection with the criminal charges allegedly filed by Lippincott.

was removed from the Monroe County Prison and taken to the Scranton Federal Courthouse, "where [he] was denied bail altogether do [sic] to the defendants [sic] compounded actions in regard to this matter." *Id*.   Parfaite further alleges that Lippincott testified falsely before the grand jury. *Id*. ¶ 8.

Parfaite also alleges that during a search preceding the charges, Lippincott failed to intervene when other officers hid exculpatory evidence and threw and destroyed his property. *Id*. ¶ 6.  He asserts that Lippincott "failed to intervene and protect [his] 4th and 5th Amendment rights, as well as [his] rights under brady." *Id*.[4]

Parfaite contends that Lippincott's actions caused him severe mental and emotional distress. *Id*. ¶ 7.  He is seeking compensatory and punitive damages. *Id*. at 5 (Prayer for Relief).  He is also seeking an apology from Lippincott and to have her terminated from her job. *Id*.

Liberally construed, it appears that Parfaite is bringing a federal claim based on the manner in which the search was executed; multiple federal claims of fabrication of evidence; federal claims of hiding exculpatory evidence; and a

---

[4] We construe Parfaite's reference here to "brady" as a reference to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

federal claim of testifying falsely before the grand jury.[5]  He also appears to be

bringing state-law claims.

Defendant Lippincott filed an answer to the second amended complaint. *See*

*doc. 25*.  We set case management deadlines, *see docs. 27, 71, 89*, and the parties

had a full and fair opportunity to conduct discovery, with the court issuing

numerous orders on the issues that arose during discovery, *see docs. 39, 46, 48, 49,*

*57, 58, 62, 63, 82, 93, 101*.

Currently pending is defendant Lippincott's motion for summary judgment.

*See doc. 107*.  That motion has been briefed. *See docs. 111, 118, 121*.[6]

---

[5] Given that Parfaite alleges that Lippincott "maliciously charged" him, *see doc. 22 ¶ 4*, the second amended complaint can also reasonably be construed as raising a malicious prosecution claim.  But in his brief in opposition to Lippincott's motion for summary judgment, Parfaite disclaims any intent to raise a malicious prosecution claim. *See doc. 118* at 10.  Thus, we do not construe the second amended complaint as raising a malicious prosecution claim.

[6] On April 27, 2023, Parfaite filed his brief in opposition. *See doc. 118*.  On May 3, 2023, he filed what he titled "Addendum to brief opposing Summary Judgement [sic]." ("addendum"). *See doc. 121*.  Although Parfaite did not seek or obtain leave of court to file such an addendum, given that Lippincott has not filed a reply brief objecting to Parfaite's addendum, we will consider it.  We note, however, that we will not consider Parfaite's proposed third amended complaint and exhibits, as he requests in his addendum, because by an order dated June 6, 2023, we denied Parfaite's motion for leave to file a third amended complaint. *See doc. 126*.

### III. **Summary Judgment Standards.**

The defendant moves for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the

7

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary

basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially

9

'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV. The Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1.  The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.*  The "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements," and "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." *Id.*  "Local Rule 56.1 was promulgated to bring greater efficiency to the work of the judges of the Middle District." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018).  "[T]he Rule 'is essential to the Court's resolution of a summary judgment motion' due to its role in 'organizing

10

the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence.'" *Id*. (citations omitted).

Here, in accordance with M.D. L.R. Pa. 56.1, defendant Lippincott filed a statement of material facts with citations to the record, *see doc. 108*, and supporting documents, *see doc. 108-1*.  As part of his brief in opposition, Parfaite filed a response to that statement of material facts with two supporting documents, *See doc. 118*.  Parfaite should have filed his response to defendant Lippincott's statement of material facts as a document separate from his brief opposition. *See* M.D. Pa. L.R. 56.1.  But because Parfaite is proceeding pro se and because defendant Lippincott has not objected to the court considering Parfaite's response, we will consider Parfaite's response.[7]  Although we will consider Parfaite's

---

[7] We note that Parfaite's response to defendant Lippincott's statement of material facts goes from paragraph 10 to paragraph 13. *See doc. 118* at page 3.  It appears, however, that this was a misnumbering error—rather than an admission to the skipped paragraphs 11 and 12—because based on the facts asserted by Lippincott and Parfaite's response it appears that what he labels as paragraphs 13 and 14 are really in response to Lippincott's paragraphs 11 and 12. *Compare doc. 108 ¶¶ 11, 12, with doc. 118 ¶¶ 13, 14*.  This misnumbering continues through Parfaite's response to paragraph 26 of Lippincott's statement of material facts, with Parfaite's response to Lippincott's paragraph 26, labeled as paragraph 28. *See doc. 118* at pages 5–6.  Parfaite's response has two paragraphs 27 and two paragraphs 28. *See id*. at page 7.  Thus, starting with his second paragraph 27, Parfaite is back tracking with Lippincott's numbered paragraphs. *See id*. at pages 7–8.

response to defendant Lippincott's statement of material facts, where Parfaite has

not cited to record evidence to create a genuine factual dispute, we consider the

facts sets forth by defendant Lippincott to be undisputed.[8]  Considering the above,

as well as our duty to "construe all facts and inferences in favor of the nonmoving

party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting

*Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), the following are the

material facts upon which we analyze defendant Lippincott's motion for summary

judgment.

On February 23, 2021, Parfaite was arrested as part of an FBI sting operation

supported by the Monroe County Drug Task Force ("MCDTF"). *Doc. 108* ¶ 1;

*Doc. 118* ¶ 1.  The MCDTF is a collaborative effort between the Office of the

District Attorney, the Pennsylvania State Police, the Pennsylvania Office of the

Attorney General, and local police departments focusing their combined efforts on

combating the sale and possession of illegal drugs. *Doc. 108* ¶ 3; *Doc. 118* ¶ 3.

Defendant Lippincott was employed as a detective by the Monroe County District

Attorney's office, and through her employment there, she was a member of the

MCDTF. *Doc. 108* ¶ 2; *Doc. 118* ¶ 2.

---

[8] For example, although Parfaite frequently purports to dispute a fact as not relevant, where he does not set forth record evidence to create a genuine factual dispute, we consider the fact as undisputed despite Parfaite's relevancy objection.

Detective Lippincott, other members of the MCDTF, and agents from the FBI conducted a surveillance operation in Monroe County based on reports from a confidential informant of drug activity. *Doc. 108* ¶ 4; *Doc. 118* ¶ 4. The investigation began on January 6, 2021, when Detective Lippincott received information from a confidential informant who stated that he was able to purchase methamphetamines and heroin from Matthew Luce who was currently on state parole. *Doc. 108* ¶ 5; *Doc. 118* ¶ 5. The informant purchased drugs from Luce on January 6, 2021, and January 8, 2021. *Doc. 108* ¶ 6; *Doc. 118* ¶ 6.

On February 17, 2021, the same informant told Detective Lippincott that he was able to purchase drugs from Luce in Room 3 of the Paramount Motel. *Doc. 108* ¶ 7; *Doc. 118* ¶ 7. The FBI set up surveillance outside the hotel and discovered that people were going in and out of the location, including Luce. *Doc. 108* ¶ 8; *Doc. 118* ¶ 8. On February 22, 2021, the same informant once again told Detective Lippincott that he was able to buy drugs from Luce at Room 3 of the Paramount Motel. *Doc. 108* ¶ 9; *Doc. 118* ¶ 9. Once again, a buy was arranged by the informant. *Doc. 108* ¶ 10; *Doc. 118* ¶ 10. The informant told Detective Lippincott that Luce was going to be staying in room 3 of this motel for some time. *Doc. 108* ¶ 10; *Doc. 118* ¶ 10.

On February 22, 2021, Detective Lippincott prepared a federal search warrant for the Paramount Motel, Room 3. *Doc. 108* ¶ 11; *Doc. 118* ¶ 13.

Detective Lippincott sent the search warrant to Assistant United States Attorney ("AUSA") James Buchannan, who approved it. *Doc. 108* ¶ 11; *Doc. 118* ¶ 13. She then presented the warrant to United States Magistrate Judge Saporito, who also approved it. *Doc. 108* ¶ 11; *Doc. 118* ¶ 13.

On February 23, 2021, at approximately 6:05 a.m. the search warrant was executed at room 3 of the Paramount Motel. *Doc. 108* ¶ 13; *Doc. 118* ¶ 15. Because of the criminal history of one of the occupants and because of information regarding possible firearms in the room, the Pennsylvania State Police's Special Emergency Response Team executed the warrant. *Doc. 108* ¶ 12; *Doc. 118* ¶ 14. Six people were in the room, including Parfaite. *Doc. 108* ¶ 14; *Doc. 118* ¶ 16. All were detained. *Doc. 108* ¶ 14; *Doc. 118* ¶ 16. A search of the room revealed the presence of heroin and methamphetamines. *Doc. 108* ¶ 15; *Doc. 118* ¶ 17.

Detective Lippincott was the primary investigator, and she completed and filed a criminal complaint against Parfaite. *Doc. 108* ¶ 16; *Doc. 118* ¶ 16. Yet, she asserts that it was not her decision to charge Parfaite or what those charges should be; that was a decision made by the U.S. Attorney's Office. *Doc. 108* ¶¶ 16, 29. But Parfaite points out that in her investigation log, Lippincott states that Assistant

District Attorney Rich White approved the state charges. *Doc. 118* ¶ 18.[9]  Thus, there is a genuine factual dispute regarding the degree of Lippincott's involvement regarding the state charges.

On March 3, 2021, AUSA James Buchanan filed a grand jury indictment in the United States District Court for the Middle District of Pennsylvania (3:21-CR-56-MEM) against Matthew Luce and Parfaite. *Doc. 108* ¶ 17; *Doc. 118* ¶ 19.  The seven-count indictment charged Parfaite in three of those counts. *See United States v. Parfaite*, 3:21-cr-00056 (M.D. Pa.) at *doc. 1*.[10]  In Count 1, the indictment charged that from November 26, 2020 to February 23, 2021, Luce and Parfaite conspired "to knowingly and intentionally distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable

---

[9] Parfaite notes that Lippincott's log also states that he was arraigned by a Monroe County magistrate judge, who set a bail on 11 states charges. *See doc. 118* ¶ 18.  The pertinent portion of Lippincott's log reads:

> Once I was able to complete the criminal complaint for Parfaite I contacted ADA Rich White who approved charges.  Detective Mario Orlando co-signed the complaint.  I contacted MDJ Germano who instructed me to fax the complaint to his office for him to be arraigned by video from the jail.  The complaint was faxed.  Bail was set in the amount of $100,000 secured.

*Doc. 108-1* at 9.  This is consistent with the state court docket sheet that Parfaite provided. *See Doc. 118-1* (*Commonwealth v. Parfaite*, MJ-43401-CR-0000074-2021 (Monroe Ctny.)).  Further, according to that docket sheet, the state charges were withdrawn on April 7, 2021. *Id*.

[10] We refer here to the actual indictment, instead of Lippincott's incomplete and inaccurate summary of the indictment.

amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. Section 841(a)(l) and 841(b)(l)(B), and to knowingly and intentionally distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule II controlled substance, in violation of 21 U.S.C. Section 841(a)(l) and 84l(b)(l)(B). All in violation of Title 21, United States Code, Sections 846." *Id*. at 1–2.  In Count 6, the indictment charged that on or about February 23, 2021, Luce and Parfaite "did knowingly and intentionally possess with intent to distribute a substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.  All in violation of Title 21, United States Code, Sections 841(a)(1)." *Id*. at 4–5.  And in Count 7, the indictment charged that on or about February 23, 2021, Luce and Parfaite "did knowingly and intentionally possess with intent to distribute a substance containing a detectable amount of heroin, a Schedule II controlled substance.  All in violation of Title 21, United States Code, Sections 841(a)(1)." *Id*. at 5.  The indictment also contained forfeiture provisions. *Id*. at 5–7.

On March 12, 2021, Parfaite was arraigned in federal court, and then Chief Magistrate Judge Mehalchick ordered Parfaite to be detained. *See United States v. Parfaite*, 3:21-cr-00056 (M.D. Pa.) at *docs. 16, 18.*  As noted above, *see supra* note 9, the state charges against Parfaite were dismissed on April 7, 2021.

16

In the federal case, Parfaite was represented, at various times, by Attorneys Carl J. Poveromo, James Scanlon, and Gino A. Bartolai, Jr. *Doc. 108* ¶ 28; *Doc. 118* ¶ 28 (second ¶ 28). Parfaite's attorneys filed various pretrial motions including an omnibus motion for pre-trial relief. *Doc. 108* ¶ 19; *Doc. 118* ¶ 21. That motion included an exhaustive list of items that Parfaite's defense team wanted to prepare for trial. *Doc. 108* ¶ 20; *Doc. 118* ¶ 22. The motion asked the AUSA for information that included the following:

    a.  a comprehensive request for written or recorded statements by Parfaite;

    b.  the substance of all oral statements Parfaite made that the AUSA intended to offer into evidence;

    c.  Any statement, confession, or admission, made by Parfaite to investigation officers or to third parties.

    d.  investigators' reports;

    e.  photographs and videos;

    f.  tangible evidence of all items seized from Parfaite's Motel room.

    g.  All documents subject to production pursuant to *Brady v. Maryland*, and its progeny, including *United States v. Agurs*, 427 U.S. 96 (1976), *Giglio v. United States*, 405 U.S. 105 (1972), and *United States v. Bagley*, 469 U.S. 1016 (1985).

*Doc. 108* ¶ 19; *Doc. 118* ¶ 21.

On March 21, 2022, Judge Mannion granted in part and denied in part Parfaite's omnibus motion. *Doc. 108* ¶ 21; *Doc. 118* ¶ 23. In his opinion, Judge Mannion noted that the Government provided Parfaite with the following:

a.  a CD containing 125 pages of documents, photographs, and videos from the execution of a search warrant on February 23, 2021, a USB flash drive containing an audio file, digital forensic reports, 12,667 pages of Facebook records and documents from the Monroe County District Attorney's office, and fifty-two pages of additional discovery materials.

b.  police reports and investigation paperwork for recorded calls, pictures of the pre-recorded buy money, pictures and video from the execution of the above-described search warrant, criminal histories of the defendants, a copy of the search warrants and applications for the above-described Paramount Motel Room, and search warrant materials for relevant social media accounts.

c.  the audio [] recording of his February 23, 2021, statement to investigators, digital forensic reports of the cellular phones recovered from the motel room on February 23, 2021, Facebook records from social media accounts, the consent to search paperwork from Ashley Grimes, Amy Beth Gearhart, Kayla Fields, the Miranda waiver form of Amy Beth Gearhart, and the Federal Bureau of Investigation ("FBI") 302 form regarding the execution of the search warrant on February 23, 2021.

d.  On July 16, 2021, the government provided "the complaint affidavit and detention order concerning Defendant Luce, interview notes from the February 23, 2021, police interviews with Ashley Grimes and Ryan Yesner, a second copy of the FBI 302 described above, the paperwork regarding the consensualization of phone recordings, . . . , and two laboratory reports from the Drug Enforcement Agency laboratory."

e.  on August 10, 2021, the government provided "a summary of the expected testimony of the CIs in this case to Defendant Parfaite," and "[i]n that summary, the Government also disclosed the expected testimony of the other individuals who were either present in the [motel] room with the defendants on February 23, 2021, or who bought controlled substances from the defendants prior to February 23, 2021."

f.  Finally, on November 5, 2021, the government provided the full, unredacted statements of both defendants, the digital forensic report of Michael Sparano to Defendant Parfaite, the jail calls from Parfaite from Lackawanna County Prison, excerpts of the text conversations between co-conspirators Luce, Parfaite, and Sparano, the MCDA incident report, the recorded interview of unindicted co-conspirator Michael Sparano, and additional criminal history paperwork regarding Parfaite.

*Doc. 108* ¶ 22; *Doc. 118* ¶ 24.  Judge Mannion noted that the Government

provided Parfaite with significant amounts of discovery:

In sum, as of November 8, 2021, the government has provided Parfaite with 1145 pages of discovery, in addition to six digital forensic reports, Facebook records from five social media accounts, approximately 140 photographs, all the recorded interviews of the co-conspirators in this case, and all the laboratory reports from the analysis of any controlled substances currently in the Government's possession.

Since Parfaite's pre-trial motions and the briefs of the parties were filed, the court recognizes that the government has now provided defendant with significant additional amounts of discovery, and that Luce has pled guilty.  Also, Parfaite now has new counsel.  Thus, some of Parfaite's motions appear to be moot.

*Doc. 108* ¶ 23; *Doc. 118* ¶ 25.  The production of discovery during the criminal

prosecution was handled by the U.S. Attorney's office. *Doc. 108* ¶ 30; *Doc. 118*

¶ 30.  The U.S. Attorney's Office represented to Judge Mannion that it understood

its *Brady* obligations and would comply with all legal mandates. *Doc. 108* ¶ 24;

*Doc. 118* ¶ 26.

A superseding information filed on March 29, 2022, charged Parfaite with one count of possession with intent to distribute methamphetamines. *See United States v. Parfaite*, 3:21-cr-00056 (M.D. Pa.) at *doc. 78.*  More specifically, it charged that on or about February 23, 2021, Parfaite "knowingly and intentionally possessed with intent to distribute 5 grams and more of methamphetamine, a Schedule II controlled substance.  All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(viii)." *Id*. at 1.  The superseding information also contained forfeiture provisions. *Id*. at 2–3.

On March 29, 2022, Parfaite signed a plea agreement with the United States. *Doc. 108* ¶ 25; *Doc. 118* ¶ 27 (first ¶ 27).  In his plea agreement, Parfaite made the following representations to the court:

> a.  Parfaite agreed to plead guilty to a felony information which charged Parfaite with violations of Title 21, United States Code, § § 841(a)(1) and (b)(1)(B)(viii), Possession with Intent to Distribute 5 grams and more of methamphetamine.

> b.  Parfaite agreed that at the time the guilty plea was entered, he would admit to the Court he was guilty of the offenses charged in the Information.

> c.  Parfaite agreed to a forfeiture of assets listed in the forfeiture allegation of the indictment;

> [d].  Parfaite agreed not to pursue or initiate any civil claims or suits against the United States of America, its agencies, or employees, regardless whether he knew who they were, arising out of the investigation, prosecution or cooperation, if any, covered by this Agreement, including but not limited to any claims for attorney's fees and other litigation expenses arising out of the investigation and prosecution of this matter.

> [e].  Parfaite agreed that by entering a guilty plea in his criminal
> case, he acknowledged that the Government's position in his
> prosecution was taken in good faith, had a substantial basis in
> law and fact and was not vexatious.

*Doc. 108* ¶ 26; *Doc. 118* ¶ 28 (first ¶ 28).  On March 31, 2022, Parfaite was

arraigned in open court and pleaded guilty to the superseding information. *Doc.*

*108* ¶ 27; *Doc. 118* ¶ 27 (second ¶ 27).

At the time that defendant Lippincott filed her statement of material facts,

Judge Mannion had not yet sentenced Parfaite. *Doc. 108* ¶ 31; *Doc. 118* ¶ 31.  But

Judge Mannion has since done so.  On November 15, 2023, Judge Mannion

entered a judgment, sentencing Parfaite to 72 months imprisonment to be followed

by a four-year term of supervised release. *See United States v. Parfaite*, 3:21-cr-

00056 (M.D. Pa.) at *doc. 129*.


**V.  Discussion**

Parfaite's constitutional claims are brought as 42 U.S.C. § 1983 claims.

Section 1983 imposes civil liability upon any person who, acting under the color of

state law, deprives another individual of any rights, privileges, or immunities

secured by the Constitution or laws of the United States." *Shuman v. Penn Manor*

*School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any

new substantive rights but instead provides a remedy for the violation of a federal

constitutional or statutory right." *Id.*  To establish a claim under §1983, the

plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Defendant Lippincott contends that she is entitled to summary judgment because she has testimonial immunity from Parfaite's claim based on her alleged false testimony; because Parfaite can not prove that he is actually innocent, his malicious prosecution claim fails; because Parfaite's claims are barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994); and because she is entitled to qualified immunity.[11]  We address each of these arguments in turn.

### A.  Testimonial Immunity.

We begin where there is agreement.  Defendant Lippincott contends that she has testimonial immunity from Parfaite's claim based on her alleged false testimony.  A witness is absolutely immune from damages under 42 U.S.C. § 1983 based on his or her testimony in court. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).  This absolute immunity extends to police officers. *Id*. at 341–46.  It also extends to a police officer's testimony before the grand jury. *Rehberg v. Paulk*, 566

---

[11] For purposes of flow, we have reordered the arguments made by defendant Lippincott.  Defendant Lippincott's arguments are addressed to Parfaite's federal claims.  She does not address Parfaite's state-law claims.

U.S. 356, 369–70 (2012).  Here, Parfaite agrees that defendant Lippincott has testimonial immunity from his claim based on her alleged false testimony.  Thus, we will grant summary judgment to defendant Lippincott as to Parfaite's claim based on her alleged false testimony.

### B.  Malicious Prosecution.

Defendant Lippincott construes Parfaite's claims, at least in part, as a malicious prosecution claim, and she contends that because Parfaite cannot prove that he is actually innocent, his malicious prosecution claim fails.  In this regard, relying on case law that has since been abrogated, Lippincott contends that Parfaite cannot meet the favorable termination requirement of a malicious prosecution claim because he cannot show that he is actually innocent.  But the Supreme Court has held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).  Rather, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id*.  The Third Circuit has recognized that *Thompson* abrogated its prior decisions requiring an affirmative indication of innocence to meet the favorable termination requirement. *See Coello v. DiLeo*, 43 F.4th 346,

23

354–55 (3d Cir. 2022) (so recognizing in the context of a discussion of the favorable-termination requirement of *Heck*).

Parfaite does not, however, take issue with defendant Lippincott's erroneous assertion that a malicious prosecution claim requires a favorable termination that affirmatively indicates innocence.  Instead, Parfaite clarifies that he is not bringing a malicious prosecution claim. *See doc. 118* at 10.  Rather, he clarifies, instead of malicious prosecution, he asserts, among other claims, "a stand alone fabrication of evidence claim." *Id*. (also characterizing his claims as "evidence tampering, falsifying official reports, misrepresenting facts in sworn reports, and tainting probable cause to make it stronger).

As noted above, *see supra* note 5, given that Parfaite alleges that Lippincott "maliciously charged" him, *see doc. 22* ¶ 4, the second amended complaint can also reasonably be construed to be raising a malicious prosecution claim.  But given Parfaite's clear disclaimer of any intent to raise a malicious prosecution claim, *see doc. 118* at 10, we do not construe the second amended complaint as raising a malicious prosecution claim.

### C.  The favorable-termination rule of *Heck*.

Defendant Lippincott contends that Parfaite's claims against her are barred by the favorable-termination rule of *Heck*.

In *Heck*, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486–87, 490 (footnote omitted). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* The "favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019). "The requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation." *Id.*

When *Heck* applies, even if the plaintiff has exhausted available state remedies, he has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of

25

habeas corpus. *Heck,* 512 U.S. at 489. "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration."

Although defendant Lippincott contends that Parfaite's claims are barred by the favorable-termination rule of *Heck,* after setting forth the favorable-termination rule, she makes only a cursory argument in that regard. That argument, in its entirety, reads:

> Parfaite seeks money for claims that can only be successful if the court finds that he was unfairly prosecuted and convicted. Yet, he acknowledged his guilt by pleading guilty and represented that the acts of the prosecution team were made in good faith. There is no right to recovery without collaterally attacking his guilty plea and conviction. He is not innocent. *Heck v. Humphrey* bars his claim.

*Doc. 111* at 8. Defendant Lippincott fails, however, to make any attempt to show why Parfaite's claims would necessarily imply the invalidity of his conviction, as required for the favorable-termination rule to apply. Again, it appears that she construes Parfaite's claims, at least in part, as a malicious prosecution claim, but, as already noted, Parfaite disclaims that he is bring a malicious prosecution claim. Parfaite also stresses that his claims focus on the state charges that were

26

withdrawn. *See doc. 118* at 5–9.[12]  Defendant Lippincott, who has not filed a reply

brief, has failed to respond Parfaite's assertions in this regard.  In sum, defendant

Lippincott has not developed an argument for why the specific claims that Parfaite

is asserting are barred by the favorable-termination rule of *Heck*.  "The court will

not assess arguments which the movants have not made[.]" *Carey v. Gayewski*,

No. 1:23-CV-00168, 2023 WL 8935057, at *4 (M.D. Pa. Dec. 27, 2023).

Accordingly, we conclude that at this time, defendant Lippincott has not shown

that she is entitled to summary judgment based on the favorable-termination rule of

*Heck*.


### D.  Qualified Immunity.

Defendant Lippincott contends that she is entitled to qualified immunity.

But we conclude that she has not shown at this time that she is entitled to qualified

immunity.[13]

Despite their participation in constitutionally impermissible conduct,

government officials "may nevertheless be shielded from liability for civil

damages if their actions did not violate 'clearly established statutory or

---

[12] As set forth earlier, we also construe the second amended complaint as
raising a claim based on how the search was executed.

[13] Although it does not affect our decision regarding qualified immunity, we
note that Parfaite's brief in opposition appears to be missing two pages that
apparently address qualified immunity. *See doc. 118* at 10–11 (brief numbered at
the bottom of the pages as pages 10 and 13).

constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity ensures that before officers are subjected to suit, they have notice that their conduct is unlawful. *Id.*  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19.

The qualified immunity analysis has two prongs. *Pearson,* 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.*  The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

"To determine whether a right was 'clearly established,' we conduct a two-part inquiry." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).  "First, we must 'define the right allegedly violated at the appropriate level of specificity.'" *Id*. (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)).  "This requires us to frame the right 'in light of the specific context of the case, not as a broad

28

general proposition.'" *Id*. (quoting *Saucier*, 533 U.S. at 201). "Second, we must ask whether that right was 'clearly established' at the time of its alleged violation, *i.e.*, whether the right was 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. (quoting *Saucier*, 533 U.S. at 202). "This is an 'objective (albeit fact-specific) question,' where '[an officer]'s subjective beliefs . . . are irrelevant.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). In other words, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority.'" *Id*. (internal citations omitted). "It is not enough that the rule is suggested by then-existing precedent." *Id*. Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*.

If the law did not put the defendant on notice that his conduct would be clearly unlawful, qualified immunity is appropriate. *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *Ashcroft*

29

*v. al-Kidd,* 563 U.S. 731, 741 (2011)).  "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

"Defendants bear the burden of establishing qualified immunity." *White v. Dauphin Cnty.*, No. 1:22-CV-1241, 2023 WL 6392735, at *4 (M.D. Pa. Sept. 29, 2023).  "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019).

Similar to her argument with respect to the favorable-termination rule of *Heck*, defendant Lippincott makes only a cursory argument as to why she is entitled to summary judgment based on qualified immunity.  After setting forth the standards applicable to qualified immunity, defendant Lippincott argues that she is entitled to qualified immunity because she did nothing unlawful or inconsistent with clearly established law:

> Lippincott is entitled to qualified immunity because she did
> nothing unlawful, or which was inconsistent with a clearly
> established law.  She performed an investigation and a stakeout
> of an individual alleged to be selling drugs.  She received a
> legal warrant based on knowledge and evidence provided to her
> by two confidential informants.  Lippincott executed the

warrant and rounded up the individuals present in the hotel
room.  It was not her role to evaluate credibility, how Parfaite
should be charged, or even whether there was sufficient
evidence to support a prosecution.  A grand jury indicted
Parfaite and the U.S. Attorney's office handled the production
of discovery required by Brady and negotiated the plea
agreement.  Nothing Lippincott did violated clearly established
law and for that reason, she is also entitled to qualified
immunity.

*Doc. 111* at 13.

At the outset, we note that although defendant Lippincott suggests that she

had no role in how Parfaite should be charged, as noted above in connection with

the material facts, Parfaite has raised a genuine factual dispute about that as to the

state charges.  Moreover, again Lippincott apparently construes Parfaite's claim as

a malicious prosecution claim, which Parfaite asserts he is not bringing.  And

defendant Lippincott has not addressed Parfaite's contention that his claims focus

on the withdrawn state charges.  Nor has she addressed Parfaite's claim regarding

how the search was executed.  In addition, although defendant Lippincott asserts

that the United States Attorney's office handled the production of *Brady* material,

she does not address Parfaite's contention that she had a duty to disclose

exculpatory evidence to the prosecution so that is could be turned over to the

defense. *See doc. 118* ¶ 30; *see also Yarris v. Cnty. of Delaware*, 465 F.3d 129, 141

(3d Cir. 2006) (stating that although '"the *Brady* duty to disclose exculpatory

evidence to the defendant applies only to a prosecutor[,]" '"police officers and

other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor'" (quoting *Gibson v. Superintendent of N.J. Dep't of Law & Public Safety–Div. of State Police,* 411 F.3d 427, 442 (3d Cir. 2005)).

In sum, we cannot conclude based on defendant Lippincott's cursory argument regarding qualified immunity, that she has met her burden of showing that she is entitled to summary judgment on that basis.

### E.  Summary and Further Proceedings.

Defendant Lippincott is entitled to summary judgment based on testimonial immunity as to the claim based on her allegedly testifying falsely in court or before the grand jury.  But defendant Lippincott has not shown that she is entitled to summary judgment as to any of Parfaite's other claims.

As mentioned above, defendant Lippincott construed Parfaite's claim as a malicious prosecution claim.  Although Parfaite asserts that he is not bringing a malicious prosecution claim, given the unclear allegations in his second amended complaint, we understand why defendant Lippincott construed his claims that way, at least in part.  As noted above, *see supra* note 5, but for Parfaite's specific assertion in his brief in opposition that he is not raising a malicious prosecution claim, we too would have construed the second amended complaint as raising a malicious prosecution claim in addition to his other claims.

Given the unclear nature of the Parfaite's second amended complaint, we think it fair to set a new dispositive motions deadline so that defendant Lippincott has an opportunity to address fully and specifically Parfaite's claims now that he has clarified that he is not bringing a malicious prosecution claim.

## VI.  Conclusion.

For the foregoing reasons, we will grant in part and deny in part defendant Lippincott's motion for summary judgment.  We will also set a new dispositive motions deadline.  An appropriate order follows.

*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge