# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER PARFAITE, | : | CIVIL NO: 3:22-CV-00316 |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| | : | |
| KIM LIPPINCOTT, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

## I.  Introduction.

Plaintiff Walter Parfaite claims that the defendant violated his rights in connection with criminal proceedings against him.  Currently pending is the defendant's second motion for summary judgment.  For the reasons set forth below, we will grant that motion.  We will also *sua sponte* dismiss some claims for failure to state a claim upon which relief can be granted.  And we will decline to exercise supplemental jurisdiction over Parfaite's state-law claim.

## II.  Background.

Parfaite began this action by filing a complaint.  *See doc. 1*.  He also filed an application to proceed *in forma pauperis*, which we granted.  *See docs. 5, 7*.  After the defendant waived service and counsel for the defendant entered an appearance,

the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C.

§ 636(c), and the case was referred to the undersigned. *See doc. 18.* Thereafter,

Parfaite filed an amended complaint, *see doc. 20*, and then a second amended

complaint, *see doc. 22*. The second amended complaint is the operative complaint.

*See doc. 26* (order so stating).

The second amended complaint names one defendant: Kim Lippincott.

Parfaite mentions the Fourth, Fifth, Eighth, and Fourteenth Amendments in his

second amended complaint. As we noted before in connection with Lippincott's

first motion for summary judgment, it is extremely difficult to ascertain the exact

nature of Parfaite's claims because he does not clearly set forth what is alleged to

have happened; he seems to assume—incorrectly—that the court is aware of

underlying events and how his allegations fit into those events. We have,

nevertheless, done our best to piece together Parfaite's allegations to try to make

sense of what he is claiming.

Parfaite alleges that on February 23, 2021, Lippincott and other non-

defendant officers arrested him, and Lippincott charged him with drug violations.

*Doc. 11* ¶ 4. According to Parfaite, Lippincott made numerous misrepresentations

and falsified evidence in connection with those charges, the events leading up to

those charges, and the events following those charges. *Id.* ¶¶ 1–5, 7, 8. More

specifically, he alleges that Lippincott falsified a statement from her informant

C.M. *Id*. ¶ 1.[1]  In this regard, he alleges that although C.M. said that a Marli

Plattenburg[2] may have been the woman using drugs in a hotel bathroom, he was

unsure. *Id*.  But, Parfaite asserts, Lippincott turned that purported uncertain

identification into a "positive false identification, of Marli Plattenburg." *Id*.  And

according to Parfaite, that false identification was used against him on October 7,

2021, and November 8, 2021. *Id*.[3]  He also alleges that Lippincott ran a "JNET

search on a silver SUV as well as taking [] photographs of the woman that was

driving." *Id*.  According to Parfaite, Lippincott falsely identified the woman as

Marli Plattenburg, even though the woman did not fit Plattenburg's description,

and Lippincott knew it was not Plattenburg. *Id*.

Parfaite also alleges that Lippincott failed to properly fill out a drug-task-

force-activity form, that she mishandled drug purchase money, and that her

"changed and false reports" in this regard were used against him on October 7,

2021, and November 8, 2021. *Id*. ¶ 2.  He further alleges that on February 23,

2021, "Lippincott fabricated physical evidence in regard to a bill from [a] February

---

[1] Although Parfaite uses C.M.'s full name, in her second motion for summary judgment, Lippincott makes a point to only use the informant's initials—C.M.  We will do the same.

[2] Parfaite does not allege who Marli Plattenburg is or how she otherwise fits into the events.

[3] Parfaite does not allege who used the identification against him or in what context it was used.

22, 2021, controlled purchase she mishandled." *Id.* ¶ 3.  He asserts that the "false and fabricated evidence" has been used against him from February 23, 2021, till the last week of March 2022," when a superseding information was filed against him. *Id.*

Parfaite also alleges that on February 23, 2021, Lippincott "maliciously charged" him with controlled substances that another person had admitted were his and with "controlled substances that were found in a little black purse with the owners identification card next to them." *Id.* ¶ 4.  Further, according to Parfaite, Lippincott included false statements in her affidavit[4] regarding what a Matthew Luce said about the drugs at issue, and she charged him with drugs that belonged to others. *Id.*  According to Parfaite, "[t]he fabricated claim and added weight of controlled substances onto what [he] admitted to, tainted the probable cause in her filed affidavit and made it stronger." *Id.*  And he contends that "[t]he defendants [sic] added weight, fabricated and misrepresented statements and facts have been used against [him] from the start, and violated [his] rights." *Id.*

Parfaite also alleges that on February 23, 2021, Lippincott falsely claimed in connection with a bail-criteria form that he was convicted of possession with intent to deliver in New Jersey and that he had misrepresented his identity. *Id.* ¶ 5.

---

[4] It is not clear whether Parfaite is referring to an affidavit in support of a search warrant or an affidavit in connection with the criminal charges allegedly filed by Lippincott.

According to Parfaite, given Lippincott's false statements, he had no chance of making bail on February 23, 2021. *Id.* On March 12, 2021, Parfaite was removed from the Monroe County Prison and taken to the Scranton Federal Courthouse, "where [he] was denied bail altogether do [sic] to the defendants [sic] compounded actions in regard to this matter." *Id.* Parfaite further alleges that Lippincott testified falsely before the grand jury. *Id.* ¶ 8.

Parfaite also alleges that during a search preceding the charges, Lippincott failed to intervene when other officers hid exculpatory evidence and threw and destroyed his property. *Id.* ¶ 6. He asserts that Lippincott "failed to intervene and protect [his] 4th and 5th Amendment rights, as well as [his] rights under brady." *Id.*[5]

Parfaite contends that Lippincott's actions caused him severe mental and emotional distress. *Id.* ¶ 7. He is seeking compensatory and punitive damages. *Id.* at 5 (Prayer for Relief). He is also seeking an apology from Lippincott and to have her terminated from her job. *Id.*

---

[5] We construe Parfaite's reference to "brady" as a reference to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

Liberally construed, it appears that Parfaite is bringing a federal claim based on the manner in which the search was executed; multiple federal claims of fabrication of evidence; federal claims of hiding exculpatory evidence; and a federal claim of testifying falsely before the grand jury. He also appears to be bringing a state-law claim of intentional infliction of emotional distress.[6]

Lippincott filed an answer to the second amended complaint. *See doc. 25*. We set case management deadlines, *see docs. 27, 71, 89*, and the parties had a full and fair opportunity to conduct discovery, with the court issuing numerous orders on the issues that arose during discovery, *see docs. 39, 46, 48, 49, 57, 58, 62, 63, 82, 93, 101*.

Lippincott filed a motion for summary judgment. *See doc. 107* ("first motion for summary judgment"). In connection with that motion, Lippincott argued, among other things, that she has testimonial immunity from Parfaite's claim based on her alleged false testimony. *See doc. 111* at 8–9. Parfaite agreed. *See doc. 118* at 10. And we granted summary judgment to Lippincott as to Parfaite's claim based on her alleged false testimony. *See doc. 133* at 1. We

---

[6] Given that Parfaite alleges that Lippincott "maliciously charged" him, *see doc. 22* ¶ 4, the second amended complaint can also reasonably be construed as raising a malicious prosecution claim. But in his brief in opposition to Lippincott's first motion for summary judgment, Parfaite disclaimed any intent to raise a malicious prosecution claim. *See doc. 118* at 10. Thus, we do not construe the second amended complaint as raising a malicious prosecution claim.

otherwise denied Lippincott's first motion for summary judgment. *Id*. at 1.

Because the nature of Parfaite's claims were unclear, but Parfaite provided some

clarification in his response to Lippincott's motion, we granted Lippincott leave to

file a second motion for summary judgment. *Id*. at 1; *doc. 132* at 33.

Currently pending is Lippincott's second motion for summary judgment. *See
doc. 137*. That motion has been briefed. *See docs. 141, 142, 151, 152*.

## III.  Summary Judgment Standards.

Lippincott moves for summary judgment under Rule 56(a) of the Federal

Rules of Civil Procedure, which provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  "Through summary adjudication the court may dispose of those claims that

do not present a 'genuine dispute as to any material fact' and for which a jury trial

would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of
Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting

Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of

the basis for its motion and identifying those portions of the record that

demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a

8

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV. The Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.* The

"[s]tatements of material facts in support of, or in opposition to, a motion shall

include references to the parts of the record that support the statements," and "[a]ll

material facts set forth in the statement required to be served by the moving party

will be deemed admitted unless controverted by the statement required to be served

by the opposing party." *Id.* "Local Rule 56.1 was promulgated to bring greater

efficiency to the work of the judges of the Middle District." *Weitzner v. Sanofi*

*Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018). "[T]he Rule 'is essential to the

Court's resolution of a summary judgment motion' due to its role in 'organizing

the evidence, identifying undisputed facts, and demonstrating precisely how each

side proposed to prove a disputed fact with admissible evidence.'" *Id.* (citations

omitted).

Here, in accordance with M.D. L.R. Pa. 56.1, Lippincott filed a statement of

material facts, *see doc. 141*, and supporting documents, *see doc. 141-1*. Parfaite

filed a response to that statement of material facts along with his declaration. *See*

*doc. 152.*[7] Although Parfaite responded to Lippincott's statement of material facts,

where he has not cited to record evidence to create a genuine factual dispute, we

consider the facts sets forth by Lippincott to be undisputed. Considering the

---

[7] Parfaite also submitted one page from a Monroe Court of Common Pleas
docket sheet from a case titled *Commonwealth v. $1,340. See doc. 152* at 19. And
in response to several statements of material fact, Parfaite points to documents
previously filed in this case. *See e.g. doc. 152* ¶ 1 (citing to *doc. 85-1* at 17).

above, as well as our duty to "construe all facts and inferences in favor of the nonmoving party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), the following are the material facts upon which we analyze Lippincott's second motion for summary judgment.

On February 23, 2021, Parfaite was arrested as part of an FBI sting operation supported by the Monroe County Drug Task Force ("MCDTF"). *Doc. 141* ¶ 1; *Doc. 152* ¶ 1.[8] The MCDTF is a collaborative effort between the Office of the District Attorney, the Pennsylvania State Police, the Pennsylvania Office of the Attorney General, and local police departments focusing their combined efforts on combating the sale and possession of illegal drugs. *Doc. 141* ¶ 3; *Doc. 152* ¶ 3. Lippincott was employed as a detective by the Monroe County District Attorney's office, and through her employment there, she was a member of the MCDTF. *Doc. 141* ¶ 2; *Doc. 152* ¶ 2.

---

[8] Parfaite purports to dispute this fact in part stating that he was already being detained due to an outstanding parole warrant. *See doc. 152* ¶ 1 (citing Affidavit of Probable Cause in support of Police Criminal Complaint—*doc. 85-1* at 17). Although the document that Parfaite cites states that Parfaite was wanted by the Pennsylvania Board of Probation and Parole and that the Board "will be lodging a detainer against him because he is an absconder," *doc. 85-1* at 17, that document does not create a genuine factual dispute about whether Parfaite was arrested on February 23, 2021, as part of an FBI sting operation supported by the MCDTF.

Lippincott, other members of the MCDTF, and agents from the FBI conducted a surveillance operation in Monroe County based on reports from a confidential informant of drug activity. *Doc. 141* ¶ 4; *Doc. 152* ¶ 4. On January 6, 2021, Lippincott received information from a confidential informant who stated that he was able to purchase methamphetamines and heroin from Matthew Luce, who was on state parole. *Doc. 141* ¶ 5; *Doc. 152* ¶ 5.[9] The informant purchased drugs from Luce on January 6, 2021, and January 8, 2021. *Doc. 141* ¶ 6; *Doc. 152* ¶ 6.[10]

On February 17, 2021, the same informant told Lippincott that he was able to purchase drugs from Luce in Room 3 of the Paramount Motel. *Doc. 141* ¶ 7; *Doc. 152* ¶ 7.[11] The FBI set up surveillance outside the hotel and discovered that

---

[9] Lippincott asserts that January 6, 2021, was when the investigation began. *Doc. 141* ¶ 5. Parfaite contends that the investigation began earlier with a failed attempt to purchase narcotics from Matthew Luce through a confidential informant. *Doc. 152* ¶ 5. Whether the investigation began on January 6, 2021, or earlier, is not material to the issues in this case.

[10] Parfaite purports to dispute this fact in part asserting that it has nothing to do with him. *Doc. 152* ¶ 6. But he does not cite to any record evidence that would create a genuine factual dispute about whether the informant purchased drugs from Luce on these dates. *Id.* Thus, we consider this fact undisputed for purposes of the present motion for summary judgment.

[11] Parfaite purports to dispute this fact in part. *See doc. 152* ¶ 7. But he does not cite to any record evidence that would create a genuine factual dispute about what the informant told Lippincott. *Id.* Thus, we consider this fact undisputed for purposes of the present motion for summary judgment.

people were going in and out of the location, including Luce. *Doc. 141* ¶ 8; *Doc.*

*152* ¶ 8.[12]  On February 22, 2021, the same informant once again told Lippincott

that he was able to buy drugs from Luce at Room 3 of the Paramount Motel. *Doc.*

*141* ¶ 9; *Doc. 152* ¶ 9.[13]  Once again, a buy was arranged by the informant. *Doc.*

*141* ¶ 10; *Doc. 152* ¶ 10.  The informant told Lippincott that Luce was going to be

staying in Room 3 of this motel for some time. *Doc. 141* ¶ 10; *Doc. 152* ¶ 10.

On February 22, 2021, Lippincott prepared a federal search warrant for

Room 3 of the Paramount Motel. *Doc. 141* ¶ 11; *Doc. 152* ¶ 11.[14]  She sent the

search warrant to Assistant United States Attorney ("AUSA") James Buchanan,

who approved it. *Doc. 141* ¶ 11; *Doc. 152* ¶ 11.[15]  She then presented the warrant

---

[12] Parfaite purports to dispute this fact. *See doc. 152* ¶ 8.  Although he cites
to several paragraphs of his declaration, those paragraphs do not create a genuine
factual dispute about the surveillance of the hotel room. *Id.*  Thus, we consider this
fact undisputed for purposes of the present motion for summary judgment.

[13] Parfaite purports to dispute this fact in part. *Doc. 152* ¶ 9.  But he does not
cite to any record evidence that would create a genuine factual dispute about what
the informant told Lippincott. *Id.*  Thus, we consider this fact undisputed for
purposes of the present motion for summary judgment.

[14] Parfaite purports to dispute this fact in part asserting that neither a warrant
nor a warrant application was provided to him during discovery. *Doc. 152* ¶ 11.
But Parfaite had adequate time to raise any discovery disputes to the court.  And he
has not shown that he raised a dispute with the court regarding the warrant or the
warrant application.  Thus, we consider this fact undisputed for purposes of the
present motion for summary judgment

[15] *See supra* note 14.

14

to then United States Magistrate Judge Saporito, who approved it. *Doc. 141* ¶ 11; *Doc. 152* ¶ 11.[16]  Luce was the original target of the investigation, and AUSA Buchanan was overseeing the prosecution of Luce and then later the prosecution of Parfaite. *Doc. 141* ¶ 12; *Doc. 152* ¶ 12.

On February 23, 2021, at approximately 6:05 a.m. the search warrant was executed at Room 3 of the Paramount Motel. *Doc. 141* ¶ 14; *Doc. 152* ¶ 14. Because of the criminal history of one of the occupants and because of information regarding possible firearms in the room, the Pennsylvania State Police's Special Emergency Response Team executed the warrant. *Doc. 141* ¶ 13; *Doc. 152* ¶ 13.[17] Six people were in the room, including Parfaite. *Doc. 141* ¶ 15; *Doc. 141* ¶ 15. Parfaite and some others found in the room were detained. *Doc. 141* ¶ 15; *Doc.*

---

[16] *See supra* note 14.

[17] Parfaite purports to dispute this fact in part. *See doc. 152* ¶ 13.  But he does not cite to any record evidence that would create a genuine factual dispute. *Id*. Thus, we consider this fact undisputed for purposes of the present motion for summary judgment.

*152* ¶ 15.[18]  A search of the room revealed the presence of heroin and

methamphetamines. *Doc. 141* ¶ 16; *Doc. 152* ¶ 16.[19]

Lippincott completed and filed the criminal complaint against Parfaite in

Monroe County state court. *Doc. 141* ¶ 22; *Doc. 152* ¶ 22.  Assistant District

Attorney Rich White approved the state criminal complaint against Parfaite. *Doc.*

*141* ¶ 23; *Doc. 152* ¶ 23.[20]  Lippincott obtained a criminal history report from

---

[18] Lippincott asserts that all six people in the room were detained. *Doc. 141*
¶ 15.  Parfaite asserts, however, that two of the individuals were not detained. *Doc.*
*152* ¶ 15. And he points to his declaration to support that assertion. *See doc. 152* at
16, ¶ 16.  Thus, Parfaite has presented a genuine factual dispute about whether all
the occupants were detained.   But that dispute is not material to Parfaite's claims
in this case.

[19] Although Parfaite disputes the exact location of the drugs found in the
room and which drugs were his, he does not dispute that drugs were found in the
room. *Doc. 152* ¶ 16.

[20] Lippincott asserts that the ultimate charging decisions against Parfaite
were made by the AUSA, and it was not her decision to charge Parfaite or what
those charges should be. *Doc. 141* ¶¶ 22, 49.  But as set forth above, it is
undisputed that the state charges were filed by Lippincott and approved by
Assistant District Attorney Rich White.  Lippincott states in her declaration that
"AUSA Buchanan decided that the charges against Parfaite should be pursued in
federal court rather than before the Monroe County Court of Common Pleas[,]"
and "[a]s a result, he instructed me to withdraw the Monroe County criminal
charges against Parfaite." *Doc. 141-1* at 135, ¶¶ 13, 14; *see also doc. 141* ¶¶ 30, 32.
Lippincott also asserts that "the charges against Parfaite in federal court arose out
of the same investigation and seizure of drugs that prompted the filing of the
Monroe County case." *Doc. 141-1* at 135, ¶ 14; *see also doc. 141* ¶ 31.  While the
AUSA may have been involved in discussions about the decision to withdraw the
state charges, that does not show that the AUSA made the decision to file the state
charges against Parfaite in the first place.  Rather, as set forth above, it is

JNET,[21] which confirmed that Parfaite had convictions for drug-related offenses. *Doc. 141 ¶ 26; Doc. 152 ¶ 26.*[22]  Magisterial District Judge Brian Germano set bail for Parfaite in the county court in the amount of $100,000. *Doc. 141 ¶ 24; Doc. 152 ¶ 24.*

AUSA Buchanan decided that the state charges should be discontinued in favor of pursuing the prosecution of Parfaite in federal court, where Matthew Luce was also being prosecuted. *Doc. 141 ¶ 30; Doc. 152 ¶ 30.*[23]

---

undisputed that the state charges were filed by Lippincott and approved by Assistant District Attorney Rich White.

[21] Lippincott notes—and Parfaite does not dispute—that "JNET, the Pennsylvania Justice Network, is the Commonwealth's primary public safety and criminal justice information sharing system.  JNET provides authorized users with access to a variety of criminal justice and public safety data sources through a single, integrated portal.  This includes the ability to search for criminal history records, warrants, and juvenile data, access to court docket information and statewide warrant searches, and sharing of police records and data between agencies." *Doc. 141* at 6 n.3.

[22] Parfaite purports to dispute this fact asserting that he did not receive the JNET report in discovery. *See doc. 152 ¶ 26.*  But he does not cite to any record evidence that would create a genuine factual dispute that Lippincott had obtained the JNET report. *Id.*  Thus, we consider this fact undisputed for purposes of the present motion for summary judgment.

[23] Parfaite purports to dispute this fact asserting that Lippincott cannot point to anything on the record to support the fact. *See doc. 152 ¶ 30.*  But Lippincott points to her affidavit to support the fact. *See doc. 141 ¶ 30* (citing to *doc. 141-1* at 135).  And Parfaite does not cite to any record evidence that would create a genuine factual dispute in this regard.  Thus, we consider this fact undisputed for purposes of the present motion for summary judgment.  Parfaite also asserts that the state case remained in place for over a month after he was indicted in federal court.  Although Parfaite has not cited to anything to support that assertion, we

On March 3, 2021, AUSA James Buchanan filed a grand jury indictment in the United States District Court for the Middle District of Pennsylvania (3:21-CR-56-MEM) against Matthew Luce and Parfaite. *Doc. 141* ¶ 28; *Doc. 152* ¶ 28.  The seven-count indictment charged Parfaite in three of those counts. *See United States v. Parfaite*, 3:21-cr-00056 (M.D. Pa.) at *doc. 1*.[24]  In Count 1, the indictment charged that from November 26, 2020 to February 23, 2021, Luce and Parfaite conspired "to knowingly and intentionally distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. Section 841(a)(l) and 841(b)(l)(B), and to knowingly and intentionally distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule II controlled substance, in violation of 21 U.S.C. Section 841(a)(l) and 84l(b)(l)(B).  All in violation of Title 21, United States Code, Sections 846." *Id*. at 1–2.  In Count 6, the indictment charged that on or about February 23, 2021, Luce and Parfaite "did knowingly and intentionally possess with intent to distribute a substance

_____

note that in connection with Lippincott's first motion for summary judgment, he submitted a copy of his state court docket sheet, which shows that the state charges were withdrawn on April 7, 2021. *See Doc. 118-1* (*Commonwealth v. Parfaite*, MJ-43401-CR-0000074-2021 (Monroe Cnty.)).

[24] We refer here to the actual indictment, instead of Lippincott's incomplete summary of the indictment.

containing a detectable amount of methamphetamine, a Schedule II controlled substance.  All in violation of Title 21, United States Code, Sections 841(a)(1)." *Id.* at 4–5.  And in Count 7, the indictment charged that on or about February 23, 2021, Luce and Parfaite "did knowingly and intentionally possess with intent to distribute a substance containing a detectable amount of heroin, a Schedule II controlled substance.  All in violation of Title 21, United States Code, Sections 841(a)(1)." *Id.* at 5.  The indictment also contained forfeiture provisions. *Id.* at 5–7.

On March 12, 2021, Parfaite was arraigned in federal court, and then Chief Magistrate Judge Mehalchick ordered Parfaite detained. *Doc. 141* ¶ 33; *Doc. 152* ¶ 33.

In the federal case, Parfaite was represented, at various times, by Attorneys Carl J. Poveromo, James Scanlon, and Gino A. Bartolai, Jr. *Doc. 141* ¶ 45; *Doc. 152* ¶ 45.  Parfaite's attorneys filed various pretrial motions including an omnibus motion for pre-trial relief. *Doc. 141* ¶ 35; *Doc. 152* ¶ 35.  That motion included an exhaustive list of items that Parfaite's defense team wanted to prepare for trial. *Doc. 141* ¶ 36; *Doc. 152* ¶ 36.  The motion asked the AUSA for information that included the following:

> a.  a comprehensive request for written or recorded statements by Parfaite;
>
> b.  the substance of all oral statements Parfaite made that the AUSA intended to offer into evidence;

c. Any statement, confession, or admission, made by Parfaite to investigation officers or to third parties.

d. investigators' reports;

e. photographs and videos;

f. tangible evidence of all items seized from Parfaite's Motel room.

g. All documents subject to production pursuant to *Brady v. Maryland*, and its progeny, including *United States v. Agurs*, 427 U.S. 96 (1976), *Giglio v. United States*, 405 U.S. 105 (1972), and *United States v. Bagley*, 469 U.S. 1016 (1985).

*Doc. 141* ¶ 35; *Doc. 152* ¶ 35.

On March 21, 2022, Judge Mannion granted in part and denied in part

Parfaite's omnibus motion. *Doc. 141* ¶ 37; *Doc. 152* ¶ 37. In his opinion, Judge

Mannion noted that the Government provided Parfaite with the following:

a. a CD containing 125 pages of documents, photographs, and videos from the execution of a search warrant on February 23, 2021, a USB flash drive containing an audio file, digital forensic reports, 12,667 pages of Facebook records and documents from the Monroe County District Attorney's office, and fifty-two pages of additional discovery materials.

b. police reports and investigation paperwork for recorded calls, pictures of the pre-recorded buy money, pictures and video from the execution of the above-described search warrant, criminal histories of the defendants, a copy of the search warrants and applications for the above-described Paramount Motel Room, and search warrant materials for relevant social media accounts.

c. the audio [] recording of his February 23, 2021, statement to investigators, digital forensic reports of the cellular phones recovered from the motel room on February 23, 2021, Facebook records from social media accounts, the consent to

search paperwork from Ashley Grimes, Amy Beth Gearhart, Kayla Fields, the Miranda waiver form of Amy Beth Gearhart, and the Federal Bureau of Investigation ("FBI") 302 form regarding the execution of the search warrant on February 23, 2021.

d.  On July 16, 2021, the government provided "the complaint affidavit and detention order concerning Defendant Luce, interview notes from the February 23, 2021, police interviews with Ashley Grimes and Ryan Yesner, a second copy of the FBI 302 described above, the paperwork regarding the consensualization of phone recordings, . . . , and two laboratory reports from the Drug Enforcement Agency laboratory."

e.  on August 10, 2021, the government provided "a summary of the expected testimony of the CIs in this case to Defendant Parfaite," and "[i]n that summary, the Government also disclosed the expected testimony of the other individuals who were either present in the [motel] room with the defendants on February 23, 2021, or who bought controlled substances from the defendants prior to February 23, 2021."

f.  Finally, on November 5, 2021, the government provided the full, unredacted statements of both defendants, the digital forensic report of Michael Sparano to Defendant Parfaite, the jail calls from Parfaite from Lackawanna County Prison, excerpts of the text conversations between co-conspirators Luce, Parfaite, and Sparano, the MCDA incident report, the recorded interview of unindicted co-conspirator Michael Sparano, and additional criminal history paperwork regarding Parfaite.

*Doc. 141* ¶ 38; *Doc. 141* ¶ 38.  Judge Mannion also noted that the Government

provided Parfaite with significant amounts of discovery:

In sum, as of November 8, 2021, the government has provided Parfaite with 1145 pages of discovery, in addition to six digital forensic reports, Facebook records from five social media accounts, approximately 140 photographs, all the recorded interviews of the co-conspirators in this case, and all the

laboratory reports from the analysis of any controlled substances currently in the Government's possession.

Since Parfaite's pre-trial motions and the briefs of the parties were filed, the court recognizes that the government has now provided defendant with significant additional amounts of discovery, and that Luce has pled guilty.  Also, Parfaite now has new counsel.  Thus, some of Parfaite's motions appear to be moot.

*Doc. 141 ¶ 39; Doc. 152 ¶ 39.*

The production of discovery during the criminal prosecution was handled by the U.S. Attorney's office. *Doc. 141 ¶ 50; Doc. 152 ¶ 50.*  The U.S. Attorney's Office represented to Judge Mannion that it understood its *Brady* obligations and would comply with all legal mandates. *Doc. 141 ¶ 40; Doc. 152 ¶ 40.*[25]

A superseding information—filed on March 29, 2022—charged Parfaite with one count of possession with intent to distribute methamphetamines. *See United States v. Parfaite*, 3:21-cr-00056 (M.D. Pa.) at *doc. 78.*  More specifically, it charged that on or about February 23, 2021, Parfaite "knowingly and intentionally possessed with intent to distribute 5 grams and more of methamphetamine, a Schedule II controlled substance.  All in violation of Title 21,

---

[25] Parfaite purports to dispute this fact in part. *See doc. 152 ¶ 40.*  But he does not cite to any record evidence that would create a genuine factual dispute. *Id.*  Thus, we consider this fact undisputed for purposes of the present motion for summary judgment.

United States Code, Sections 841(a)(1) and (b)(1)(B)(viii)." *Id*. at 1.  The

superseding information also contained forfeiture provisions. *Id*. at 2–3.

On March 29, 2022, Parfaite signed a plea agreement with the United States.

*Doc. 141* ¶ 42; *Doc. 152* ¶ 42.  In his plea agreement, Parfaite made the following

representations to the court:

> a.  Parfaite agreed to plead guilty to a felony information which charged Parfaite with violations of Title 21, United States Code, § § 841(a)(1) and (b)(1)(B)(viii), Possession with Intent to Distribute 5 grams and more of methamphetamine.

> b.  Parfaite agreed that at the time the guilty plea was entered, he would admit to the Court he was guilty of the offenses charged in the Information.

> c.  Parfaite agreed to a forfeiture of assets listed in the forfeiture allegation of the indictment;

> d.  Parfaite agreed not to pursue or initiate any civil claims or suits against the United States of America, its agencies, or employees, regardless whether he knew who they were, arising out of the investigation, prosecution or cooperation, if any, covered by this Agreement, including but not limited to any claims for attorney's fees and other litigation expenses arising out of the investigation and prosecution of this matter.

> e.  Parfaite agreed that by entering a guilty plea in his criminal case, he acknowledged that the Government's position in his prosecution was taken in good faith, had a substantial basis in law and fact and was not vexatious.

*Doc. 141* ¶ 43; *Doc. 152* ¶ 43.  On March 31, 2022, Parfaite pleaded guilty to the

superseding information. *Doc. 141* ¶ 44; *Doc. 152* ¶ 44.

On November 15, 2023, Judge Mannion entered a judgment, sentencing Parfaite to 72 months imprisonment to be followed by a four-year term of supervised release. *Doc. 141* ¶ 51; *Doc. 152* ¶ 51; *see also United States v. Parfaite*, 3:21-cr-00056 (M.D. Pa.) at *doc. 129.* Although Parfaite filed an appeal, on October 7, 2024, the United States Court of Appeals for the Third Circuit dismissed that appeal pursuant to Fed. R. App. P. 42(b).[26] *See United States v. Parfaite*, 3:21-cr-00056 (M.D. Pa.) at *docs. 137, 142.*

## V.  Discussion.

Parfaite's remaining claims are multiple federal claims of fabrication of evidence; federal claims of hiding exculpatory evidence; a federal claim based on the manner in which the search was executed; and a state-law claim of intentional infliction of emotional distress.  We will address the federal claims first.

### A.  Federal Claims.

Parfaite's constitutional claims are brought as 42 U.S.C. § 1983 claims. Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor*

---

[26] Federal Rule of Appellate Procedure 42(b) deals with voluntary dismissal in the Court of Appeals. *See* Fed. R. App. P. 42(b).

*School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To establish a claim under §1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Lippincott contends that she is entitled to summary judgment as to the remaining federal claims because she did not make any misrepresentations outside of her testimonial immunity; because Parfaite cannot state a constitutional claim for misrepresentations at a bail hearing; because Parfaite's claims are barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994); and because she is entitled to qualified immunity.  We address each of Parfaite's claims, but before we do so, we set forth the law applicable to *Heck*'s favorable-termination rule and the law applicable to qualified immunity.

### 1. The favorable-termination rule of *Heck*.

In *Heck*, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state

tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486–87 (footnote omitted). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. The "favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough v. Smith*, 588 U.S. 109, 117–18 (2019). "The requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation." *Id.* at 118.

When *Heck* applies, even if the plaintiff has exhausted available state remedies, he has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. *Heck,* 512 U.S. at 489. "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would

26

necessarily demonstrate the invalidity of the confinement or its duration."

*Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005).

      *Heck* applies to a conviction based on a guilty plea. *See Gilles v. Davis*, 427

F.3d 197, 209 n.8 (3d Cir. 2005) ("[U]nder *Heck*, both a guilty plea and an ARD

are sufficient to bar a subsequent § 1983 claim.").

      Claims barred by the favorable-termination rule of *Heck*, must be dismissed

without prejudice. *See Curry v. Yachera*, 835 F.3d 373, 380 (3d Cir. 2016)

(explaining that a dismissal with prejudice based on *Heck* was error and modifying

the order of dismissal based on *Heck* "to reflect that these claims are dismissed

without prejudice").  "[A] § 1983 claim that attacks the validity of a plaintiff's

conviction or sentence does not accrue for statute-of-limitations purposes until the

underlying criminal case is favorably terminated." *Coello v. DiLeo*, 43 F.4th 346,

353 (3d Cir. 2022).  And when a claim is barred by *Heck*'s favorable-termination

rule, the plaintiff can renew such a claim "'if he ever succeeds in overturning his

conviction[.]'" *Curry*, 835 F.3d at 379 (quoting *Perez v. Sifel*, 57 F.3d 503, 505

(7th Cir. 1995)).  That is why a dismissal based on *Heck* is without prejudice. *Id*.

## 2. Qualified Immunity.

      Despite their participation in constitutionally impermissible conduct,

government officials "may nevertheless be shielded from liability for civil

damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity ensures that before officers are subjected to suit, they have notice that their conduct is unlawful. *Id.*  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19.

The qualified immunity analysis has two prongs. *Pearson,* 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.*  The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

"To determine whether a right was 'clearly established,' we conduct a two-part inquiry." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).  "First, we must 'define the right allegedly violated at the appropriate level of specificity.'" *Id*. (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)).  "This requires

us to frame the right 'in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). "Second, we must ask whether that right was 'clearly established' at the time of its alleged violation, *i.e.*, whether the right was 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 202). "This is an 'objective (albeit fact-specific) question,' where '[an officer]'s subjective beliefs . . . are irrelevant.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). In other words, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority.'" *Id.* (internal citations omitted). "It is not enough that the rule is suggested by then-existing precedent." *Id.* Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

If the law did not put the defendant on notice that his conduct would be clearly unlawful, qualified immunity is appropriate. *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009). "In other words, 'existing precedent must have placed the statutory or constitutional question

beyond debate.'" *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)).  "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

"Defendants bear the burden of establishing qualified immunity." *White v. Dauphin Cnty.*, No. 1:22-CV-1241, 2024 WL 3046718, at *4 (M.D. Pa. June 18, 2024).  "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019).

### 3. Fabrication-of-Evidence Claims.

Parfaite claims that Lippincott denied him due process by fabricating evidence against him.  "Fabricated evidence is an affront to due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for 'corruption of the truth-seeking function of the trial process.'" *Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)); *see also Halsey v. Pfeiffer*, 750 F.3d

273, 293 (3d Cir. 2014) ("We emphatically reject the notion that due process of law permits the police to frame suspects.").  Whether a plaintiff is convicted or acquitted, he or she may have a claim based on fabrication of evidence. *Black*, 835 F.3d at 371.  But the Third Circuit has "cautioned . . . that there are 'hurdles facing a plaintiff alleging a due process violation for fabrication of evidence.'" *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017) (quoting *Black*, 835 F.3d at 372).  "A plaintiff must demonstrate a 'meaningful connection' between the injury and the use of the fabricated evidence." *Id.* (quoting *Black*, 835 F.3d at 372).  "There is also a requirement that the evidence be 'so significant that it could have affected the outcome of the criminal case.'" *Id.* (quoting *Black*, 835 F.3d at 372).  Further, "the standard required to demonstrate that evidence is fabricated is a 'notable bar.'" *Id.* (quoting *Black*, 835 F.3d at 372).  "[T]testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey*, 750 F.3d at 295.  Rather, a "fabrication-of-evidence claim requires persuasive evidence [the defendant] formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Mervilus v. Union Cnty.*, 73 F.4th 185, 194–95 (3d Cir. 2023).

### a. Statement of the Confidential Informant.

Parfaite contends that defendant Lippincott fabricated a statement from confidential informant C.M. *See doc. 22* ¶ 1. More specifically, he contends that C.M. said that Marli Plattenburg may have been the woman using drugs in the hotel bathroom, but he was not sure. *Id.* But, according to Parfaite, defendant Lippincott changed that "may have been" identification into a positive false identification. *Id.* And Parfaite alleges that this false identification was used against him on 10/7/21 and 11/8/21. *Id.* He further alleges that Lippincott knew that the woman in question was not Marli Plattenburg. *Id.*

Parfaite he has not shown the significance of this purported false identification or how it injured him. Nor has he pointed to evidence that Lippincott willfully, knowingly, or with a reckless disregard for its truth falsified the evidence. And given that Parfaite was arrested and charged after he was found in the hotel room with drugs, a reasonable trier of fact could not conclude that this purported mischaracterization of the CI's statement was so significant that it could have affected the outcome of the state criminal case. Thus, to the extent that Parfaite is asserting a claim based on this this purported false identification in connection with the state charges, his claim fails on the merits.

Although Parfaite alleges that this purported false identification was used

against him on 10/7/21[27] and 11/8/21,[28] as mentioned, he has not shown the

significance of this purported false identification or how it injured him. Moreover,

given that Parfaite alleges that this purported false identification was used against

him after the state charges were dismissed and while the federal charges were

pending and given that he pleaded guilty to the federal charges and his conviction

has not been vacated or otherwise drawn into question, a fabrication-of-evidence

---

[27] Lippincott points out that October 7, 2021, is the date that the United
States filed a motion in limine and brief in support in Parfaite's federal case. *See
doc. 142* at 7–8*; See also United States v. Parfaite*, 3:21-cr-00056 (M.D. Pa.) at
*docs. 37, 38.* We note that the United States' motion in limine concerned the
United States's intent to submit prior felony convictions of Luce and Parfaite if
they testified at trial. *See doc. 37.* And in the United States' brief in support of its
motion in limine, the only mention of Plattenburg is as follows about an arranged
buy by the confidential informant from Luce on February 17, 2021:

> The CI stated that there were other individuals in the hotel
> room, including a young girl, and a woman who the CI
> observed shooting heroin in the hotel room bathroom. Three
> cars were also observed parked outside the room, including one
> belonging to Marli Plattenburg, (PA # LLY2948 2004 Hyundai
> Sante Fe) who the CI identified as the woman shooting heroin.

*Doc. 38* at 5 in 3:21-cr-00056.

[28] Lippincott also points out that November 8, 2021, is the date that the
United States filed a brief in opposition to Parfaite's pretrial motions in the federal
case. *See doc. 142* at 8–9; *see also United States v. Parfaite*, 3:21-cr-00056 (M.D.
Pa.) at *doc. 47* (brief in opposition to both Parfaite and Luce's pretrial motions).
That brief contains the same, single reference to Plattenburg as set forth in the
United States' brief in support of its motion in limine and as quoted above. *See
doc. 47* at 6-7 in 3:21-cr-00056; *see also supra* note 27.

claim based on this purported false identification in connection with the federal charges is barred by the favorable termination rule of *Heck*. *See McDonough*, 588 U.S. at 119–24 (concluding that similar to the claims in *Heck*, a due process fabrication-of-evidence claim is "most analogous to a claim of common-law malicious prosecution," and thus, such a claim accrues "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*").

### b. Bail-Criteria Form.

Parfaite also contends that Lippincott fabricated a bail-criteria form. *See doc. 22* ¶ 5. He asserts that on that form, Lippincott stated that he was convicted of "PWID" in New Jersey, which Parfaite contends is false. *Id*. He also asserts that on that form, Lippincott stated that he misrepresented his true identity, which Parfaite contends is false. *Id*.

Lippincott asserts that she did not lie on the bail-criteria form, and she asserts that she obtained Parfaite's criminal history from JNET. *Doc. 141* ¶¶ 25, 26. Parfaite replies that the JNET report does not show that he was convicted of PWID. *Doc. 152* ¶ 25. Rather, it shows that he was convicted of "USE/POSS W/INTENT TO USE DRUG." *Id*.; *see also doc. 141-1* at 131. We agree with Parfaite that there is a difference between what the JNET report and what was written on the bail-criteria form. But although we understand that Parfaite disputes

where certain drugs were found and which drugs were his, given that it is

undisputed that heroine and methamphetamines were found in the hotel room

where Parfaite was, a reasonable trier of fact could not conclude that this

misstatement on the bail-criteria form was so significant that it could have affected

the outcome of bail proceeding.  Similarly, Parfaite has not presented evidence

from which it can reasonably be inferred that the purported misrepresentation

regarding him misrepresenting his identity was so significant that it could have

affected the outcome of bail proceeding.[29]  Thus, Parfaite's fabrication-of-evidence

claim based on the bail-criteria form fails.[30]

_____

[29] Further, Parfaite has not pointed to any evidence showing how the form was used in connection with his state bail hearing.  The form itself states: "This form is to be completed by the affiant on all defendants prior to the preliminary arraignment and is to be attached to the criminal complaint submitted to the correctional facility of the Magisterial District Judge." *Doc. 85-1* a 28.  Given this, it may be reasonable to assume that the form was submitted to the Magisterial District Judge.  But to the extent that Parfaite is claiming that the form affected his federal bail proceedings, there is no basis to assume that the form was presented to then Chief Magistrate Judge Mehalchick, who conducted the detention hearing, and Parfaite has not presented any evidence that it was, in fact, presented to Judge Mehalchick.

[30] In his second amended complaint, Parfaite also mentions the Eighth Amendment in connection with the bail-criteria form. *See doc. 22* at 3.  Lippincott does not squarely address the Eighth Amendment.  But in support of her argument that Parfaite cannot maintain a claim for a misrepresentation at a bail hearing, she does cite a case—*Frantz v. Kingston Police Dep't*, No. 3:15-CV-0402, 2015 U.S. Dist. LEXIS 56046, at *4 (M.D. Pa. Apr. 9, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 55521, at *1 (M.D. Pa. Apr. 28, 2015)—which, in the part cited by Lippincott, addresses the Eighth Amendment.  "District courts 'possess the power to enter summary judgments *sua sponte,* so long as the losing

### c. Other Purported Falsifications.

Parfaite also contends that Detective Lippincott failed to fully and properly fill out a drug-force-activity form, that she failed to date and sign the copy of the purchase money, and that she failed to have the informant make his mark showing that he received the money from her or showing where the money was found. *Doc. 22* ¶ 2.  He also contends that Lippincott falsified physical evidence regarding money for a controlled buy on February 22, 2021. *Id*. ¶ 3.  Again, to the extent, Parfaite is contending these purported fabrications lead to the state charges, he has not shown the significance of these things.  Nor given that drugs were found in the

---

party was on notice that she had to come forward with all of her evidence.'" *In re SemCrude L.P.*, 864 F.3d 280, 296 (3d Cir. 2017) (quoting *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 280 (3d Cir. 2010)).  "'Notice' simply requires that 'the targeted party ha[ve] reason to believe the court might reach the issue and receive[ ] a fair opportunity to put its best foot forward.'" *Id*. (quoting *Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006).  Further, even if notice was not provided," the grant of summary judgment is only reversible if there is prejudice." *Id*.

Here, although Lippincott does not specifically argue that she is entitled to summary judgment as to the Eighth Amendment claim, she does argue that she is entitled to summary judgment as to the claim of misrepresentation at the bail hearing, which is the basis for Parfaite's Eighth Amendment claim, and she cites an Eighth Amendment case.  Given this, we conclude that Parfaite had notice and a full and fair opportunity to present his facts regarding his Eighth Amendment claim.  And for the reasons set forth above, a reasonable factfinder could not conclude that the purported misrepresentations affected the bail determination.  Accordingly, we will grant summary judgment to defendant Lippincott on the Eighth Amendment claim.

hotel room where Parfaite was found, can he show how they injured him. Thus, such claims based on the state charges fail on the merits.

Moreover, like his claim regarding the purported false-identification claim, to the extent he is claiming that such purported fabrications lead to or involved his federal charges, such claims are barred by the favorable-termination requirement of *Heck* given that his federal conviction has not been invalidated.

### 4. Exculpatory Evidence Claim.

Parfaite claims that Lippincott failed to provide him with exculpatory evidence. We construe Parfaite's claim as a claim based on *Brady v. Maryland*, 373 U.S. 83 (1963).

In *Brady*, which involved the prosecution withholding a statement by a witness admitting to the murder of which Brady was convicted, the Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "The requirements of *Brady* are not based on any general constitutional right to discovery in criminal cases, but rather on a defendant's due process right to a fair trial." *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983). "Because *Brady* rests on the requirements of due process," in determining when *Brady* material

must be turned over, the "focus must be on when disclosure is necessary to insure

[the defendant] a fair trial." *Id.* at 43. "No denial of due process occurs if *Brady*

material is disclosed to [the defendant] in time for its effective use at trial." *Id*. at

44. "'There are three components of a true *Brady* violation: [(1)] The evidence at

issue must be favorable to the accused, either because it is exculpatory, or because

it is impeaching; [(2)] that evidence must have been suppressed by the State, either

willfully or inadvertently; and [(3)] prejudice must have ensued.'" *Thompson v.*

*City of Williamsport*, No. 4:22-CV-01159, 2024 WL 1747645, at *6 (M.D. Pa.

Apr. 23, 2024) (quoting *Strickler v. Greene*, 527 U.S. 263, 282 (1999)).

   A police officer has a duty to disclose exculpatory evidence to the

prosecution so that it can be turned over to the defense. *See Yarris v. Cnty. of*

*Delaware*, 465 F.3d 129, 141 (3d Cir. 2006) (stating that although "'the *Brady* duty

to disclose exculpatory evidence to the defendant applies only to a prosecutor[,]'"

"'police officers and other state actors may be liable under § 1983 for failing to

disclose exculpatory information to the prosecutor'" (quoting *Gibson v.*

*Superintendent of N.J. Dep't of Law & Public Safety–Div. of State Police,* 411 F.3d

427, 442 (3d Cir. 2005)).

   Here, although Parfaite contends that he was not provided with exculpatory

evidence, he has not presented evidence from which a reasonable factfinder could

conclude that Lippincott withheld evidence that would have been exculpatory.

38

Moreover, if Parfaite is contending that Lippincott should have turned over exculpatory evidence while the state charges were pending, given that those charges were pending for only a very short time and given that "[n]o denial of due process occurs if *Brady* material is disclosed to [the defendant] in time for its effective use at trial," *Higgs*, 713 F.2d at 44, Parfaite cannot show that he was prejudiced by the purported failure to disclose while the state charges were pending. And to the extent that Parfaite is claiming that Lippincott failed to turn over exculpatory evidence in connection with the federal charges, such a claim is barred by the favorable-termination rule of *Heck*. *See Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (citing *Heck* and stating that because a claim under *Brady* that exculpatory evidence was withheld, "when successful postconviction, necessarily yields evidence undermining a conviction[,] . . . *Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983").

### 5. Search Claim.

Parfaite claims that Lippincott violated his Fourth Amendment rights in connection with the execution of the search of the hotel room.[31] He is seeking to

---

[31] In his second amended complaint, Parfaite also mentions the Fifth Amendment. *See doc. 22* at 4. The Fifth Amendment provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment, however, applies only to the federal government and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237 (M.D. Pa. 1995). "It does not apply

hold Lippincott liable because she failed to intervene to prevent the destruction of his property. *See doc. 22* ¶ 6.

Lippincott asserts that she did not destroy Parfaite's property during the search, and she did not observe anyone destroy Parfaite's property during the search. *Doc. 141* ¶ 17. Parfaite responds that he "never claimed the defendant did anything but fail to intervene to protect [his] rights in this instance." *Doc. 152* ¶ 17. But he asserts that Lippincott was in the room at the time, and in a video, she can be seen and heard speaking on a cell phone while his property is being thrown and smashed. *Id*.

"To prevail on a failure to intervene claim, a plaintiff must show: (1) that the defendant failed or refused to intervene when a constitutional violation took place

---

to the acts or conduct of the states, their agencies, subdivisions, or employees." *Id.* The Due Process Clause of the Fifth Amendment is not applicable in this case because Lippincott is a state, not a federal, actor. Although Lippincott has not specifically moved for summary judgment as to the Fifth Amendment claim, the court has the authority to sua sponte dismiss a claim brought by a party proceeding *in forma pauperis* or by a prisoner seeking redress from governmental officers. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (providing that where a plaintiff is proceeding *in forma pauperis*, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted"); 28 U.S.C. § 1915A(b)(1) (providing that in a case brought by a prisoner seeking redress from a governmental entity, officer, or employee, the court shall "dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted"). Here, pursuant to that authority, we will dismiss the Fifth Amendment claim.

in his or her presence or with his or her knowledge; and (2) there was a realistic and reasonable opportunity to intervene." *Balliet v. Luzerne Cnty.*, No. 3:22-CV-02032, 2024 WL 2275252, at *8 (M.D. Pa. May 20, 2024) (citations and internal quotation marks omitted). The United States Court of Appeals has "recognized a right to have a government actor intervene when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention," but it has held that its "precedent does not establish, let alone clearly establish, a right to intervention in other contexts." *Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023) (medical context), *cert. denied*, 2024 WL 4426554, at *1 (U.S. Oct. 7, 2024), and 2024 WL 4426555, at *1 (U.S. Oct. 7, 2024).

Given that the Third Circuit has observed that a failure-to-intervene claim is not clearly established outside the excessive-force and sexual-assault contexts, we conclude that Lippincott is entitled to qualified immunity from Parfaite's failure to intervene claim relating to the execution of the search.

We note that although Lippincott makes a general argument that she is entitled to qualified immunity, she does not specifically mention the search claim within that argument. Nevertheless, as set forth above, *see supra* note 31, in certain circumstances the court may sua sponte dismiss claims brought by a prisoner or a plaintiff proceeding *in forma pauperis*. And the Court may address

qualified immunity *sua sponte* "where it is clear on the face of the complaint that a party is immune from suit." *Newland v. Reehorst*, 328 F. App'x 788, 791 (3d Cir. 2009) (citing 28 U.S.C. § 1915(e)(2)(B)(iii), which provides that in a case in which the plaintiff is proceeding *in forma pauperis* "the court shall dismiss the case at any time if the court determines that . . . the action . . . seeks monetary relief against a defendant who is immune from such relief."); *see also Doe v. Delie,* 257 F.3d 309, 312,  322 n. 13 (3d Cir.2001) (affirming district court's *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) [failure to state a claim] on the basis of qualified immunity).  Here, because it is clear from the face of Parfaite's second amended complaint that he is seeking to hold Lippincott liable on a failure-to-intervene claim and such is a claim is not clearly established in this context, we will dismiss the search claim sua sponte based on qualified immunity.

### B. State-Law Claim.

In addition to federal claims, it appears that Parfaite is asserting a state-law claim for intentional infliction of emotional distress. *See doc. 22* ¶ 7.  Such a claim would fall within the court's supplemental jurisdiction.

Whether to exercise supplemental jurisdiction is within the discretion of the court.  28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed

all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Parfaite's state-law claim. Accordingly, because we conclude that the defendant is entitled to summary judgment or dismissal as to the federal claims, the court will decline to exercise supplemental jurisdiction over Parfaite's state-law claim.

## VI. Conclusion.

For the foregoing reasons, we will dismiss Parfaite's Fifth Amendment due process claim pursuant to § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1). And pursuant to § 1915(e)(2)(B)(ii), (iii), we will dismiss Parfaite Fourth Amendment failure-to-intervene claim based on the search. We will grant summary judgment to defendant Lippincott as to Parfaite's fabrication-of-evidence claims based on the bail-criteria form, all other fabrication-of-evidence claims based on the state charges, the *Brady* claims based on the state charges, and the Eighth Amendment bail claim. Pursuant to the favorable-termination rule of *Heck*, we will dismiss without prejudice the other fabrication-of-evidence claims based on the federal charges and the *Brady* claims based on the federal charges. Further, we will decline to exercise supplemental jurisdiction over Parfaite's state-law claim. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge